**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **FLAGSTAR BANK, FSB,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**TIMOTHY DANIEL, CATHY DANIEL,** )<br>**and ESTATE QUESTA VERDE** )<br>**TOWNHOUSES, A CONDOMINIUM,** )<br>)<br>**Defendants.** )<br>_____ ) | **Civil Action No. 2013-0058** |

**Attorneys:**
**A. Jennings Stone, Esq.,**
St. Thomas, U.S.V.I.
 *For Plaintiff*

### MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" against Timothy Daniel and Cathy Daniel, husband and wife, and Estate Questa Verde Townhouses, filed by Plaintiff Flagstar Bank, FSB ("Flagstar"). (Dkt. No. 33). For the reasons discussed below, the Court will grant Flagstar's Motion for Default Judgment.

### I.  BACKGROUND

On June 6, 2013, Flagstar filed a Complaint against "Timothy Daniel and Cathy Daniel, Husband and Wife" (the "Daniels"), alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). In its Complaint, Flagstar asserted that the Daniels are titleholders of record to real property ("the Property"), described in the Warranty Deed as:

> Unit No. N-56 in Estate Questa Verde Townhouses, a Condominium established at Plots 11, 12 and 13 Estate Hermon Hill, St. Croix, U.S. Virgin Islands, according to Declaration of Condominium dated June 26, 1967 and recorded June 30, 1967 as Doc. No. 1761 – 1765 in PC 64-M, page 208, and as subsequently amended;

> TOGETHER WITH a 1.22366% undivided interest in the common areas and facilities appurtenant to the condominium.

(Dkt. No. 34-1). The Complaint alleges that, on February 23, 2009, the Daniels, jointly and severally, executed and delivered to Flagstar a promissory note (the "Note"), which obligated them to pay the principal amount of $225,103.00, together with interest at a rate of 5.500% per annum, in consecutive monthly installments of $1,278.11 beginning April 1, 2009. (Dkt. No. 1, ¶¶ 7-8). To secure payment of the Note, the Daniels granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Flagstar and its successors and assigns, a first priority mortgage (the "Mortgage") dated February 23, 2009 over the Property. The Mortgage provided that the Daniels would pay the payments due under the Note. *Id.* ¶¶ 10-11.

The Complaint went on to say that, on or about January 1, 2013, the Daniels defaulted under the terms and conditions of the Note in that monthly installments of principal and interest became due and were not paid, and they also defaulted under the terms and conditions of the Mortgage because principal, interest, and other charges became due and were not paid. *Id.* ¶¶ 12, 13. Flagstar gave notice of default to the Daniels on February 15, 2013, advising them that failure to cure the default would result in acceleration of the debt and foreclosure of the Mortgage; however, the default had not been cured as of the date the Complaint was filed. *Id.* ¶¶ 14-16. On April 23, 2013, MERS, for itself and as nominee for Flagstar, assigned its entire interest in the Property to Flagstar. *Id.* ¶ 18.

With regard to the debt cause of action, the Complaint alleged that the Daniels owe Flagstar the unpaid principal balance, accrued interest, advances, expenses, fees, costs and late charges totaling $212,741.19 as of May 1, 2013; that Flagstar was entitled to collect all sums due under the Note from the Daniels and was entitled to be reimbursed for any insurance premiums, taxes, or other charges it may pay with respect to the Property under the terms of the Mortgage; and that

under the terms of the Note and Mortgage, Flagstar was entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment on the Note or incidental to foreclosure on the Property. *Id.* ¶¶ 21-24.

With regard to the foreclosure cause of action, the Complaint provided that Flagstar was entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from the Daniels. *Id.*, ¶¶ 27-29.

Timothy and Cathy Daniel were served with the Summons and Complaint on June 22, 2013. (Dkt. Nos. 4, 5). They neither answered the Complaint nor appeared in this action. Flagstar sought entry of default against the Daniels and, on July 24, 2013, the Clerk of Court entered default against them. (Dkt. No. 8). On August 16, 2013, the Daniels filed an Answer to the Complaint in which they agreed to all of its allegations. (Dkt. No. 9). They stated that they were applying for a modification of the Mortgage, and asked that the Complaint be dismissed so as to allow them to identify other remedies. *Id.*

On September 4, 2013, Flagstar filed a Motion to Amend the Complaint to add Questa Verde as a Defendant. (Dkt. No. 10). The Court granted Flagstar's Motion on September 26, 2013 (Dkt. No. 14), and the First Amended Complaint was filed on September 30, 2013. (Dkt. No. 15). The Amended Complaint was similar to the initial Complaint, although it contained an additional allegation that, on June 3, 2011, Questa Verde recorded a Notice of Condominium Lien in the amount of $3,500.69 against the Property that was subordinate to Flagstar's lien. *Id.* ¶ 13. Summonses were re-issued to Timothy and Cathy Daniel (Dkt. Nos. 16, 18) and a summons was issued to Questa Verde. (Dkt. No. 17). None of the parties answered the Amended Complaint or appeared in this action.

On March 17, 2014, Flagstar sought entry of default against Questa Verde. (Dkt. No. 22). In its accompanying Memorandum, Flagstar stated that it served Attorney Mark Eckard—who represented that he was authorized to accept service on behalf of Questa Verde—with the Summons and Amended Complaint via email, and the time for answering or otherwise responding to the Amended Complaint had expired. (Dkt. No. 23). As an attachment, Flagstar reproduced its email chain with Attorney Eckard, in which he agreed to accept service on behalf of Questa Verde via email. (Dkt. No. 23-1). By Order, the Magistrate Judge of this Court granted the application for entry of default against Questa Verde. (Dkt. No. 26).

On February 17, 2015, Flagstar filed a "Second Motion for Entry of Default against Timothy Daniel and Cathy Daniel." (Dkt. No. 27). In its Memorandum, Flagstar asserted that Timothy and Cathy Daniel were residents of Florida; a copy of the Summons and Amended Complaint was delivered to each of them via certified mail, return receipt requested, on or about October 10, 2013 (Timothy Daniel) and October 17, 2013 (Cathy Daniel). *Id.* The return receipts were attached to the Memorandum. (Dkt. No. 28-1). Because the Daniels had not answered or otherwise appeared, Flagstar requested entry of default against them. (Dkt. No. 28). On March 4, 2015, the Clerk of Court entered default against the Daniels. (Dkt. No. 29).

On August 26, 2015, Flagstar filed its Motion for Default Judgment against the Daniels and Questa Verde (Dkt. No. 33), along with a Memorandum of Law in Support (Dkt. No. 34), an Affidavit of Indebtedness (Dkt. No. 35), and a Declaration of Counsel in Support of Costs and Attorney's Fees. (Dkt. No. 36). In its Memorandum of Law, Flagstar argues that the procedural elements for default judgment have been satisfied because: the Daniels were properly served with copies of the Summons and Amended Complaint, and the Clerk of Court entered default against them for failing to answer, plead or otherwise defend the matter. (Dkt. No. 34 at 8, citing Dkt. No.

29). Flagstar asserts that the Daniels are not infants, incompetent persons, nor in the military service. *Id.* (citing attached Affidavit of Indebtedness, Dkt. No. 35). In addition, Flagstar asserted that it properly served Questa Verde with a copy of the Summons and Amended Complaint, and the Clerk of Court entered default against it. *Id.* (citing Dkt. No. 26).

Flagstar further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that: title to the Property is held by the Daniels, who jointly and severally executed the Note and the accompanying Mortgage; Flagstar has possession of the original Note and is holder of the Mortgage in its own right and by way of the MERS Assignment; the Daniels have defaulted under the terms of the Note and the Mortgage by failing to make timely payments of interest and principal as required by those documents; Flagstar gave the Daniels proper notice of the default and they failed to cure the default; and Flagstar elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 8-9.

In addition, Flagstar states that Questa Verde holds a Notice of Condominium Lien of $3,500.69 against the Property, but its lien is superior to Questa Verde's as a matter of law because it is a first priority mortgage. *Id.* at 9 (citing Affidavit of Indebtedness, Dkt. No. 35). Flagstar also cites 28 V.I.C. § 922(a), which provides that "[a]ll sums assessed by the [condominium association] but unpaid for the share of the common expenses chargeable to any apartment shall constitute a lien on such apartment prior to all other liens except . . . all sums unpaid on a first mortgage of record." *Id.* Since its lien is superior to Questa Verde's, Flagstar asserts that Questa Verde's lien may be foreclosed as well. *Id.* Flagstar provided a copy of the Condominium Lien, dated June 3, 2011. (Dkt. No. 34-6).

Finally, Flagstar asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 9-13.

In support of its Motion, Flagstar filed an Affidavit of Indebtedness, signed by Andrea Bilek, a Loan Administration Analyst with Flagstar Bank, who explained that the Bank's document management system keeps track, and maintains business records, of transactions related to the Mortgage and Note as part of the Bank's regularly conducted business activity. (Dkt. No. 35, ¶¶ 2-3, 5, 7-8). The Affidavit sets forth the amounts due and owing to Flagstar through August 1, 2015: $212,741.19 in unpaid principal balance; interest from December 1, 2012 through August 1, 2015 of $31,201.92; escrow advances of $5,514.49, consisting of Flagstar's payment of mortgage insurance premiums and property taxes for 2012-2015; and pro rata mortgage insurance premiums of $91.32; for a total amount of $249,548.92. *Id.* ¶¶ 10. In addition, $1,342.63 is due and owing for accumulated late fees and $325.00 is due for inspections or other property preservation fees, for a total amount due and owing of $251,216.55. *Id*. ¶¶ 11-13. Ms. Bilek asserts that interest accrues at the monthly rate of $975.06 for each month after August 1, 2015 until paid. *Id.* ¶ 14. She also states that, based on the information she reviewed in connection with the loan, she had no information indicating that the Daniels were either minors or incompetent. *Id.* ¶ 16. In addition, pursuant to an investigation conducted on July 16, 2015 using official online resources provided by the Department of Defense's Manpower Data Center, she states that there was no record that the Daniels were active members of the military service. *Id.*; Dkt. No. 35-8.

In its Declaration of Counsel in Support of Costs and Attorney's Fees, Flagstar's Counsel, A. Jennings Stone, III, Esq., averred that he, as a Senior Associate Attorney, billed $250.00 per hour in this case, as did Attorney Nycole Thompson. (Dkt. No. 36). His Declaration also indicated that paralegals Pam Bayless and Gynah Guishard billed at an hourly rate of $125.00. The attached

6

billing records showing that the total time spent on this matter was 26.45 hours through August 25, 2015; that the total amount of attorney's fees incurred was $6,537.50, which included $75.00 billed for paralegal work; and that the total amount of costs expended was $804.65. *Id.*; Dkt. No. 36-1. The Memorandum of Law and attached affirmations from local attorneys provided legal and factual support for counsel's position that the hourly rates charged were reasonable. (Dkt. No. 34 at 13-16, Dkt. Nos. 34-3, 34-4, 34-5). Flagstar also argued that the $75.00 charged for paralegal fees should be compensated. *Id*. at 14.

In January 2016, the Court issued an Order in which it noted that, for diversity purposes, Virgin Islands condominium associations such as Questa Verde possess the citizenship of the states where its members are citizens, and Flagstar had pleaded Questa Verde's citizenship as if it were a citizen of the Virgin Islands rather than of the states where its members were citizens. As a result, Flagstar had not properly pleaded diversity of citizenship. (Dkt. No. 37). The Court permitted Flagstar to amend its First Amended Complaint to properly allege diversity jurisdiction if there was a factual basis to do so. *Id.* Flagstar subsequently moved for leave to conduct jurisdictional discovery (Dkt. No. 38), which the Court granted (Dkt. No. 39). On May 5, 2016, Flagstar filed its Second Amended Complaint. (Dkt. No. 47). The relevant paragraphs for pleading diversity jurisdiction provide:

> Plaintiff Flagstar Bank, FSB ("Flagstar") is a federally chartered stock savings bank with its designated main office located in the state of Michigan. Flagstar is a citizen of Michigan for diversity purposes.

(Dkt. No. 47, ¶ 1);

> Defendant Timothy Daniel is an individual and, upon information and belief, a citizen of Florida for diversity purposes.

*Id.* ¶ 2;

7

> Defendant Cathy Daniel is an individual and, upon information and belief, a citizen of Florida for diversity purposes.

*Id.* ¶ 3; and

> Defendant Estate Questa Verde Townhouses, a Condominium (the "Condominium") is, after investigation and inquiry, an unincorporated association having no members who are citizens of the state of Michigan.

*Id.* ¶ 4. The Second Amended Complaint also provides that the Court has subject matter jurisdiction over this matter as complete diversity exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000 exclusive of costs and fees. *Id.* ¶ 5.

## II. APPLICABLE LEGAL PRINCIPLES

In a motion for default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp.,* 574 F. App'x at 231 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*Flagstar Bank, FSB v. Rivers,* 2014 WL 1101858, at *3 (D.V.I. Mar. 18, 2014) (quoting *Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

### III.  ANALYSIS

#### A. Default Judgment against The Daniels

Flagstar has satisfied all of the requirements necessary to obtain a default judgment against the Daniels. It has shown that: the Daniels were validly served with process in relation to the First Amended Complaint, pursuant to the Virgin Islands Long-Arm Statute, 5 V.I.C. § 4911(a)(3) (Dkt. Nos. 28, 28-1)[1]; default was entered against the Daniels by the Clerk of Court (Dkt. No. 29); and the Daniels have not appeared. Further, in the Affidavit of Indebtedness, Flagstar's Loan Administration Analyst, Andrea Bilek, who is familiar with the loan file, averred: "Based on the

---

[1] Flagstar served the Daniels with copies of the First Amended Complaint by certified mail, return receipt requested, and produced copies of the signed return receipts. (Dkt. Nos. 28, 28-1). This manner of service was proper pursuant to 5 V.I.C. § 4911(a)(3) which provides: "When the law of this territory authorizes service outside this territory, the service, when reasonably calculated to give actual notice, may be made: . . . (3) by any form of mail addressed to the person to be served and requiring a signed receipt[.]".

information I have reviewed in connection with the Subject Loan, I have no information indicating that Borrowers are minors or incompetent," (Dkt. No. 35, ¶ 16), which is sufficient to satisfy the default judgment requirement that a plaintiff show that the defaulting defendants are not incompetent persons or infants. *See FirstBank Puerto Rico v. Jaymo Properties, LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (holding that bank official's affidavit stating in good faith that defendant was a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purposes of obtaining a default judgment).

In addition, Flagstar provided copies of Military Status Reports from the Department of Defense Manpower Data Center showing that neither Timothy Daniel nor Cathy Daniel were in the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 35-8). Flagstar has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 35 and attachments).

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to Flagstar resulting from the Daniels' breach of their contractual obligations, and the apparent absence of a litigable defense for the Daniels, weigh in favor of the Court granting default judgment. In addition, the Daniels' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Accordingly, default judgment against the Daniels is appropriate.

.
.

### B. Default Judgment against Questa Verde

Questa Verde was named as a Defendant in this lawsuit because it had a Condominium Lien on the Property. Its attorney, Mark Eckard, Esq., accepted service of the Summons and First Amended Complaint by email, as shown by the email chain that Flagstar attached to its application for entry of default. (Dkt. No. 23-1). Questa Verde never answered or appeared, and default was entered by the Magistrate Judge of this Court. (Dkt. No. 26). Because Questa Verde is an unincorporated association, the default judgment requirements for individual defendants—that they not be infants or incompetent persons, or in the active military service—are not relevant here. In addition, Questa Verde was named as a defendant pursuant to 28 V.I.C. § 521 because it had a lien on the Property that is the subject of this action. Flagstar does not seek judgment against Questa Verde, only an Order from the Court adjudicating the priority of liens. Thus, the default judgment requirement that the plaintiff show the amount of damages and how they were calculated is not relevant either. The Court has also considered the *Chamberlain* factors, to the extent they apply, and finds that default judgment against Questa Verde is appropriate.

### C. Priority of Liens

There is no dispute that Flagstar's Mortgage, executed on February 23, 2009, has priority over Questa Verde's Condominium Lien, executed on June 3, 2011. The relevant statute, 28 V.I.C. § 922(a), provides that condominium liens are entitled to priority over all other liens "*except . . . all sums unpaid on a first mortgage of record*" (emphasis added). Accordingly, because Flagstar's Mortgage is a first mortgage of record, the Court finds that Flagstar has a first priority lien on the Property and Questa Verde has a second priority lien on the Property, and that these liens may be foreclosed.

### D. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 35-1, ¶ 6(C); Dkt. No. 35-2, ¶ 18). The Mortgage also provides that it is "governed by federal law and the law of the jurisdiction in which the Property is located." (Dkt. No. 35-1, ¶ 14). Because the Property is located in the Virgin Islands, the Court will look principally to the body of case law interpreting 5 V.I.C. § 541(b)—governing attorney's fees—in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Rivers*, 2014 WL 1101859, at *4 (D.V.I. Mar. 18, 2014).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v.*

*Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

Addressing the hourly rate first, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Flagstar's Attorney, A.J. Stone, III, a senior associate at BoltNagi, PC, provided affirmations from three Virgin Islands attorneys who aver that the typical hourly rate for partners at Virgin Islands law firms—who have over fifteen years of experience—is between $225.00 to $335.00 per hour. (Dkt. Nos. 34-3, 34-4, 34-5). Two of the affirmations indicate that associates are paid $250.00 per hour. *See* Dkt. No. 34-3, ¶ 5 (noting that "the highest hourly billing rate for an associate attorney [at the declarant's firm] is $250.00/hr."); Dkt. No. 34-5, ¶ 3 (stating that the typical associate attorney rate for foreclosure work is $250.00 per hour).

The billing records, spanning from April 10, 2013 through August 25, 2015, show that Attorney Stone and Attorney Thompson billed $250.00 per hour. Based on the documentation provided, the Court concludes that the $250.00 per hour rate charged by Attorneys Stone and Thompson is reasonable and falls within the scope of rates for such services for comparable attorneys.

The billing summary also contains $75.00 (0.6 hours of work) billed to paralegals Pam Bayless and Gynah Guishard. (Dkt. No. 36-1). Attorney Stone asserts that this work would otherwise have been performed by an attorney at a higher rate, and using paralegals provides "efficient and cost-effective legal services." (Dkt. No. 36 at 2). Flagstar's Memorandum of Law cites 20 Am. Jr. 2d Costs § 52 n.7, two prior Virgin Islands District Court cases, and 73 A.L.R. 4th

938 § II(A)(3), for the proposition that a majority of state jurisdictions have approved the inclusion of paralegal work as part of attorney fee awards. (Dkt. No. 34 at 14).

The Court recognizes that work performed by paralegals that could otherwise have been performed by a licensed attorney at a higher rate, is more cost effective and efficient. In addition, although the Court also recognizes that it has, in the past, awarded attorney's fees for paralegal services, this is an issue of local law and this Court is required to follow local law when assessing whether attorney's fees are reasonable. Local law does not award fees for paralegals, and this Court must follow that lead. *See, e.g., Mahabir v. Heirs of George*, 2014 WL 1392954, at *1 (V.I. Super. Ct. Apr. 4, 2014) ("Defendant has provided no argument or case law demonstrating that 5 V.I.C. § 541(b) stands for the proposition that a prevailing party may obtain law clerk or paralegal fees as part of its award of attorney's fees. Other courts in the Virgin Islands have denied similar fees on this basis."); *Chapa v. Sepe*, 2013 WL 8609242, at *1 (V.I. Super. June 3, 2013) (same); *cf. Morcher v. Nash*, 32 F. Supp. 2d 239, 241 n.1 (D.V.I. 1998) (paralegal fees denied "because no authority [was] advanced for their inclusion"). Accordingly, the Court will reduce the award of attorney's fees by $75.00.

With regard to the reasonableness of the time expended, Flagstar seeks compensation for 25.85 hours of work billed in this matter (excluding the time billed to paralegals), totaling $6,386,50. This is well in excess of the amount of time expended in run-of-the-mill default judgment debt and foreclosure cases. *See, e.g., Bank of America v. Deshazer*, 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees for 14.55 hours of work); *Flagstar Bank FSB v. Canegata,* No. 13-cv-52 (D.V.I. Feb. 20, 2015) (awarding $3,500.00 in attorney's fees for 14.75 hours of work). Reviewing the billing summary, the Court notes that a portion of this additional time is attributable to the fact that the Complaint had to be amended to

add Questa Verde; the existence of two Defendants increased the work that had to be expended by Plaintiff's attorney; and, by the time the billing records were submitted, the case had already lasted over two years. However, these facts, in the Court's view, do not account for an additional eleven hours of time billed in this case when compared to other debt and foreclosure cases. The Court notes that counsel billed approximately 2.25 hours to draft a two-page memorandum in support of its request for an entry of default against the Daniels, and .25 hours to draft a response to an Order to Show Cause as to why the case was not progressing—time that should not be added to attorney's fees and the Judgment. The billing summary also contains a rather sizeable amount of time for research on service issues (2.25 hours) that is not usually included in typical debt and foreclosure cases. Given the fact that the requested fees are disproportionally high, the fees do not cover the work involved in 2016 addressing diversity jurisdiction, and the Court cannot find the amount of fees, as requested, reasonable, the Court will reduce the $6,462.50 fees sought by fifteen percent, or $969.38, and will award attorney's fees of $5,493.12 through August 25, 2015.

With regard to costs and expenses, Flagstar also seeks reimbursement of $804.65 for "additional charges," representing title search, filing, recording, and process server fees, postage and certified mail fees, and messenger fees. (Dkt. No. 36-1). The Note provides that Flagstar "may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note[.]" (Dkt. No. 35-1, ¶ 6(C)). The Mortgage provides that the Bank is "entitled to collect all expenses incurred" in pursuing foreclosure remedies "including . . . costs of court." (Dkt. No. 35-2, ¶ 18). Here too, because the Mortgage is "governed by federal law and the law of the jurisdiction in which the Property is located," *id.* ¶ 14, the Court will look to Virgin Islands law for guidance in determining appropriate costs and expenses.

Title 5, Section 541(a) defines what costs are "allowed in a civil action."[2] "Expenses" are not defined by statute, nor are they defined in the Mortgage or other loan documents.[3] In order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014) (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute). Similarly, in order for expenses (under the contract) to be reimbursed, they must also be reasonable. *See Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative expenses, "unless the fee is unreasonable."); Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct, adopted by the Supreme Court of the Virgin Islands, effective February 1, 2011 (providing that fees and expenses awarded in the Virgin Islands must be "reasonable").

Although Plaintiff has requested reimbursement for "additional charges," none of the items fit within the statutory definition of "costs." Rather, the items are properly considered expenses under the contract.

The Court finds that expenses related to title search, filing, recording, and process server fees are reasonable under the contract and will be allowed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding

---

[2] The costs allowed under Virgin Islands law are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

[3] The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. *Terrell v. Coral World,* 55 V.I. 580, 591 n.14, 2011 WL 3492575 (V.I. July 20, 2011).

filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients."). While it is well-established that "overhead costs," such as postage, are not compensable under § 541, *Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014), it appears that the $24.44 in certified mail costs expended on October 3, 2013 relate to service of the Summons & Amended Complaint on Timothy Daniel and Cathy Daniel and are allowable pursuant to 5 V.I.C. § 541(a). A postage cost of $1.72 and a certified mail cost of $6.49 on September 24, 2014 will not be allowed as representing overhead. Neither will messenger service fees of $10.00 be allowed. *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *2 (D.V.I. Dec. 20, 2007) (disallowing messenger service fees under § 541). The Court will therefore award $786.44 in expenses.

### IV. CONCLUSION

Flagstar has satisfied the requirements necessary for a default judgment against Defendants Timothy Daniel, Cathy Daniel, and Estate Questa Verde Townhouses. Accordingly, Flagstar's Motion for Default Judgment against Timothy Daniel, Cathy Daniel, and Estate Questa Verde Townhouses will be granted. (Dkt. No. 33). In addition, the Court will award $5,493.12 in attorney's fees and $786.44 in expenses, for a total award of $6,279.56 in attorney's fees and expenses through August 25, 2015.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: October 20, 2016 _____/s/_____
WILMA A. LEWIS
Chief Judge